IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

CHRISTINE A. WHITE,

Debtor.

C.A. No. 19-03723

Lynn E. Feldman, Chapter 7 Trustee,

Plaintiff,

v.

People First Federal Credit Union

Defendant.

## MEMORANDUM

**SCHMEHL, J.**  /s/ JLS                                          MARCH  31, 2020

This is an appeal from a final judgment of the United States Bankruptcy Court for the Eastern District of Pennsylvania. For the reasons that follow, the final judgment of the Bankruptcy Court is affirmed.

District courts have jurisdiction to hear appeals from final judgments and orders of the bankruptcy courts. Under the Federal Rules of Bankruptcy Procedure, a district court, sitting as an appellate tribunal, "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. In so doing, the district court applies a clearly erroneous standard to review a bankruptcy court's factual findings and a *de novo* standard to review its conclusions of law. *See In re Siciliano*, 13 F.3d 748,750 (3d Cir. 1994).

The material facts are not in dispute. The Debtor and her husband maintained a mortgage on their home with People First Federal Credit Union ("People First"). When the Debtor and her husband defaulted on the mortgage, People First initiated foreclosure proceedings. As a last measure to avoid a scheduled Sheriff's Sale of her home, the Debtor chose to make a hardship withdrawal from her 401(k) account that was administered by Prudential. The Debtor specifically indicated on the request form that the hardship request was based on the active foreclosure of her principal residence. The Debtor mailed her request and certification of use to Prudential on November 10, 2017. Prudential approved the withdrawal and sent Debtor a check in the amount of $45,965 (the "Funds"). Prudential issued, dated and mailed the check on December 5, 2017. The check arrived at the Debtor's residence at 2:33 p.m. on December 7, 2017. At 2:58 p.m. on December 7, 2017, the Debtor, through her attorney, filed a Chapter 7 bankruptcy petition and the Trustee was appointed. Following the filing of the Chapter 7 petition, the Debtor endorsed the check she received from Prudential and gave it to her attorney with instructions to pay the proceeds to People First. On December 11, 2017, the Debtor's attorney deposited the check into his IOLTA checking account. On December 14, 2017, the Debtor's attorney paid the Funds to People First.

Although the Debtor disclosed her interest in the 401(k) Plan in her bankruptcy Schedule A/B, the Debtor did not disclose her interest in the Funds. Nor did she claim an exemption in her interest in the Funds in her bankruptcy Schedule C or any amendments thereto. There is no dispute that had the Funds remained in the Debtor's

401(k) account, they would have been exempted from becoming part of her bankruptcy estate. *See* 11 U.S.C.§ 541(c)(2).

On June 6, 2018, the Trustee filed this adversary proceeding with the Bankruptcy Court, seeking to avoid the transfer of the Funds to People First as an unauthorized post-petition transfer of property of the estate under 11 U.S.C.§ 549(a). The parties filed cross-motions for summary judgment. On May 7, 2019, the Bankruptcy Court granted the Trustee's motion for summary judgment, finding that Funds were the property of the Debtor's bankruptcy estate at the time the Debtor filed her bankruptcy petition and the post-petition transfer to People First therefore constituted an unauthorized transfer. The Bankruptcy Court also concluded that the Funds could not be considered as exempt property under the "earmarking doctrine." People First subsequently filed a motion for reconsideration. On August 7, 2019, the Bankruptcy Court denied the motion for reconsideration. This appeal followed.

The elements of an unauthorized post-petition transfer under section 549(a) are "1) after commencement of the bankruptcy case in question, 2) property of the estate, 3) was transferred, and 4) the transfer was not authorized by the Bankruptcy Court or by a provision of the Bankruptcy Code. *In re Natl Pool Const., Inc.,* 2013 WL 878582, at *2 (Bankr. D.N.J. March 8, 2013). "Under § 549(a), while the trustee bears the burden pf proving that a postpetition transfer of estate property occurred, the burden of proof as to the validity of that transfer is on the entity claiming the transfer was valid." *In re Bill*, 529 B.R. 779, 784 (Bank. D. Idaho 2015).

People First argues that the Bankruptcy Court erred when it concluded that an unauthorized post-petition transfer took place. Specifically, People First contends that the Funds were never property of the bankruptcy estate.

As noted above, the Funds were exempted from the bankruptcy estate while they were still part of the Debtor's 401(k) account. 11 U.S.C.§ 541(c)(2). However, once the Funds were withdrawn and received by the Debtor **prior** to the filing of her bankruptcy petition, albeit for a short time, the Funds became part of the Debtor's bankruptcy estate because they became available to other creditors of the Debtor. *See, e.g.*, *Bank of America v. Seligman (In re Seligman),* 478 B.R. 497, 503 (N.D. Ga. Bank. 2012) (401(k) funds withdrawn prior to filing bankruptcy petition "constitute property of the estate."). The fact that the check for the Funds was not actually cashed or deposited before the bankruptcy petition was filed is of no moment. *Marchand v. Whittick* (*In re Whittick*), 547 B.R. 628, 635 (Bank. D.N.J. 2016). ("While the Court found no cases concerning a check issued prepetition and negotiated postpetition, it finds that the debtor's prepetition future interest in the PERS loan became property of the estate pursuant to section 541(a)(1), with the proceeds of that property becoming property of the estate pursuant to section 541(a)(6) upon receipt of the funds postpetition.") Therefore, an unauthorized transfer occurred when the Debtor transferred the Funds through her attorney to People First **after** she filed her Chapter 7 bankruptcy petition.

People First contends that the Bankruptcy Court erred when it refused to apply the "earmarking doctrine." Specifically, People First argues that since the Funds were originally in the Debtor's 401(k) account and therefore were exempt from becoming part of the Debtor's bankruptcy estate, the Funds should still be exempted because they

4

were specifically earmarked by the Debtor in an express understanding for the specific purpose of satisfying her mortgage with People First. The Court does not agree.

As noted by the Bankruptcy Court, "[t]he earmarking doctrine is entirely a court-made interpretation of the statutory requirement that a voidable preference must involve a transfer of an interest of the debtor in property." *Schubert v. Lucent Techs, Inc. (In re Winstar Communications, Inc)*, 554 F. 3d 382, 400 (3d Cir. 2009). "As a judicial exception to the general avoidance rules, earmarking is narrowly construed by courts." *FBI Wind Down, Inc. v. All American Poly Corp.* 581 B.R. 116. 133 (Bankr. D. Del. 2018). The doctrine's most common application occurs when "a third party makes a loan to a debtor specifically to enable that debtor to satisfy the claim of a designated creditor." *Id.* As explained by our Court of Appeals, "[when] . . . funds are provided by [a] new creditor to or for the benefit of the debtor for the purpose of paying the obligation owed to [an existing] creditor, the funds are said to be 'earmarked' and the payment is held not to be a voidable preference." *Winstar Communications*, 554 3d at 400.

The earmarking doctrine has mainly been applied to claims brought under 11 U.S.C. § 547 to avoid **pre**-petition transfers. In fact, many courts have refused to recognize the earmarking doctrine as a defense to a claim, such as the one before the Court, brought under section 549 to avoid a **post**-petition transfer. *See Rouse v.GMAC/GMAC Mortg. Corp. (In re Garringer)*, 2006 WL 3519342 *3 (W.D. Mo. Bankr. 2006) ("The Court is not aware of any cases that have applied the earmarking doctrine to validate or shield postpetition transfers of estate property, and the Court sees no legal or practical basis to extend its application here."); *Sommers v. Katy Steel Co. (In re Contr. Tech., Ltd.)*, 343 B.R. 573, 580 n.2 (Bankr. S.D. Tex. 2006) ("Whether the

5

funds are properly characterized as being subject to a trust or earmarked is irrelevant under § 549."); *Lange v. State Farm Bank, F.S.B. (In re Billesbach)*, 2011 WL 3295299 *1 (Bankr. D. Neb. 2011) (finding that the earmarking doctrine did not apply, as the matter at issue was not a preference action. Rather, the trustee was attempting to avoid the lien under 11 U.S.C.S. §§ 544 and 549.); *Aalfs v. Wirum (In re Straightline Invs.)*, 525 F.3d 870, 878-79 (9th Cir. 2008) ("We decline to expand the diminution of estate doctrine, from its established application in § 547 and § 548 cases, to this § 549 case. Although the primary purpose of 11 U.S.C. § 549 is to allow the trustee to avoid post-petition transfers of property which deplete the estate [citation omitted], the plaintiff's failure to demonstrate a measurable depletion of the estate is not enough to allow a transfer to stand when it is otherwise avoidable under § 549 because it satisfies all of the explicit requirements of an avoidable postpetition transfer.").

While the Bankruptcy Court cited several cases that applied the earmarking doctrine to post-petition transfers under section 549[1], the Bankruptcy Court concluded that it need not decide whether the earmarking doctrine should be applied in a §549 case because People First failed to prove that the transfer of the Funds in question qualify under the earmarking doctrine. This Court agrees.

The elements of earmarking are as follows: "(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt, (2) performance of that agreement according to its terms,

---

[1] See *Musso v. Brooklyn Navy Yard Dev. Corp. (In re Westchester Tank Fabricators, Ltd.*), 207 B.R. 391, 397-99 (Bankr. E.D.N.Y. 1997); *Herzog v. Sunarhauserman (In re Network 90 degrees, Inc.*), 98 B.R. 821, 837 (Bankr. N.D. Ill. 1989), *aff'd* 126 B.R. 990 (N.D. Ill. 1991); *Boldt v. Alpha Beta Co. (In re Price Chopper Supermarkets, Inc.*), 40 B.R. 816, 820 (Bankr. S.D. Cal. 1984).

6

and (3) the transaction viewed as a whole…does not result in any dimunition of the [debtor's] estate. *Winstar Communications*, 554 3d at 400.

The burden of proving that the transfer is avoidable under section 549(a) is on the Trustee. Once the Trustee has proven that the transfer is avoidable, the burden shifts to the transferee to prove that the funds at issue satisfy the three elements of the earmarking doctrine. *Id*. at 400-01.

Narrowly construing the earmarking doctrine, the Bankruptcy Court correctly concluded that People First had failed to satisfy the first element of the earmarking defense because the Funds did not come from a new lender or third person, but rather came from the Debtor's own 401(k) account. In other words, the Funds were always in the Debtor's possession. The Debtor essentially made a loan to herself.

People First cites a case, *In re Kenosha Liquidation Corp.*, 158 B.R. 774 (Bankr. E.D. Wis. 1993), where the earmarking defense was permitted in a situation where two shareholders and directors of the debtor, instead of a lending-type creditor, loaned the funds to the debtor who then used them to pay the creditor. The distinction is irrelevant as the Funds used by the Debtor to pay off her mortgage with People First originally belonged to *the Debtor*, not a third-party.

Finally, the Court notes that the cases cited by the Bankruptcy Judge, *supra*, which actually applied the earmarking defense to a section 549 claim all involved a third-party lender. Once again, the Court emphasizes that in this case, there was no third-party lender, the lender being the Debtor herself.

The Bankruptcy Court correctly concluded that an unauthorized post-petition transfer took place. To the extent the earmarking defense even applies to a section 549

7

claim, the Bankruptcy Court, relying on our Court of Appeal's application of the doctrine in *Winstar Communications*, correctly concluded that it does not apply here because the lender was not a third-party, but the Debtor herself. The final judgment of the Bankruptcy Court is affirmed.